## Roehrs v. Timmons.

[No. 3,514.    Filed April 3, 1902.]

LANDLORD AND TENANT.—*Injury from Defective Premises.*—*Liability of Landlord.*—A landlord is not liable for injuries to a tenant resulting from a defective condition of the premises, he not having let the premises with knowledge of the defects, or covenanted to make repairs.  p. 581.

SAME.—*Lease.*—*Covenant to Repair Not Implied.*—A promise to repair made by a landlord prior to the execution of a lease has no binding effect if not incorporated as a part thereof.  p. 582.

SAME.—*Lease.*—*Covenant to Repair During Tenancy.*—A promise to repair, made by a landlord to his tenant during the tenancy without other consideration than such tenancy, is unenforceable.  pp. 582, 583.

From Allen Superior Court; *W. J. Vesey*, Judge.

Action by Bertha Timmons against Henry Roehrs for damages. From a judgment for plaintiff, defendant appeals. *Reversed.*

*J. M. Barrell* and *S. L. Morris*, for appellant.
*Henry Colerick*, for appellee.

ROBINSON, P. J.—Suit by appellee for personal injuries from alleged defective leased premises.

Appellant purchased, in 1892, a certain brick building having at the rear end, at the second story, an uncovered porch about three and one-half by five feet, to enable tenants occupying the second floor to go out upon the porch and by the stairway reach the roof of the building for the purpose of drying clothes thereon, the porch being for no other purpose. This porch was not constructed in a safe and substantial manner, but from the time of its construction it was a fragile, insecure and dangerous place for a person to go upon and to cross over. July 1, 1896, appellant leased the building to one Levy, the written lease simply providing that Levy was to rent the building, the rent to be paid on July 1, 1896, and each succeeding month thereafter at a specified rate, and if a certain arch was cut in a room each was to pay half the expense. Under this lease Levy took possession and afterwards, in the same month, sublet the second story to appellee for her husband, who paid to Levy the monthly rental up to the date of appellee's injuries. During the three and one-half years which appellee occupied the premises she had used the porch once or twice a week for going upon the roof. Appellee could not have examined the porch without trespassing upon the premises of others, nor could she have discovered whether it was defective, weakened and unsafe if she had made an examination thereof. The porch was not in good condition and safe for the uses for which it was intended at the beginning of appellee's occupancy, and continued in that condition up to the time of her injuries. Levy continued to be the lessee of the building up to and after appellee's injuries. Appellee and her husband as tenants had the sole use and control of the second story and the porch, and during all this time Levy occupied the room immediately below. During this time there was a door opening upon and into an area in the rear of the lower room immediately below the porch, and from this area the manner in which the porch was attached to the building could be seen by one looking at the same, and

at all times during appellee's occupancy she could by going through this door have ascertained the condition of the porch and how it was fastened or supported. But prior to and at the time of the leasing from Levy appellee did not know of this rear door, and she never made such examination prior to her injury. Appellant prior to July 1, 1896, had made an agreement with Levy that he would keep up and pay for all repairs of the building. Appellant had no knowledge or notice prior to appellee's injuries that the porch was unsafe, and at no time did appellee notify him that it was unsafe or out of repair, and at no time did she request him to repair it. The porch was not open to view as to its construction both from below and above. The falling of the porch with appellee was the result of decay in the supports, and this decay resulted from use of the porch, the weather and age. From July 1896, up to the time of the injuries appellant made all repairs on the premises at his own expense, and after the tenancy of Levy he made repairs upon the upper story. Levy made no repairs at his own expense. During the time appellee occupied the premises appellant informed her that he was to make all repairs. From the time appellant became the owner of the building until the time of the accident, being a period of more than seven years, he made no examination at all of the porch or its condition. By the exercise of ordinary care he could have discovered the fragile, dangerous and unsafe condition of the porch in its construction. The apparent condition of the porch to persons occupying the second floor was that it was ordinarily safe for the uses and purposes for which it was intended. Appellee was seriously injured by a portion of the porch breaking down and throwing her down a distance of about thirteen feet.

The complaint avers that the porch was dangerously, carelessly and negligently constructed by appellant. The findings show it was constructed by appellant's vendor, but they also show that appellant could, by the exercise of ordi-

nary care, have discovered the fragile, dangerous and unsafe condition of the porch in its construction, but whether before or after the beginning of the tenancy is not shown. The complaint also avers that appellant negligently and carelessly permitted the supports to become rotten, and carelessly and negligently failed to repair the same, and carelessly and negligently permitted the same to be and remain to those using and occupying the second floor in an apparently reasonably safe condition, though the same was known or by the exercise of ordinary care could have been known to appellant. The jury find that the falling of the porch with appellee was the result of decay in the supports and this decay resulted from use of the porch, the weather, and age.

If the landlord leased the premises knowing at the time that they were in a defective condition, whether from negligent construction or from decay, and concealed that fact from a tenant, he might be held liable for damages without regard to any question as to his duty to make repairs. See *Helwig* v. *Jordan*, 53 Ind. 21, 21 Am. Rep. 189; *Deller* v. *Hofferberth*, 127 Ind. 414. But if the premises were in a safe condition when leased and afterwards became defective through the supports becoming rotten through use, age and the weather, the liability of the landlord could not exist unless it was his duty to make repairs. The pleading must rest upon one theory or the other, because in one case a recovery would be sought upon the theory of a positive wrong done, while in the other it would rest upon the theory of a negligent failure to perform a contractual duty.

The averment in the pleading that "although defendant had agreed with said Levy as well as said Timmons that he would keep said premises in repair," taken in connection with other averments, makes it susceptible of the construction that its theory is to charge a liability through a negligent failure to perform the contractual duty to repair. The answers to interrogatories preclude a recovery on the theory

that appellant knowingly leased premises in a defective condition because of negligent construction, because the jury find that the falling of the porch with appellee was the result of decay in the supports, and this decay resulted from use of the porch, weather, and age.

There is no implied covenant on a landlord's part to repair. Such a covenant can not be implied from the mere relation of landlord and tenant. The tenant has possession and control of whatever passes to him under the lease. The landlord has no right to go upon the premises unless the tenant consents, or he reserves the right in the lease. 1 Taylor Landl. & Ten. (8th ed.) §§174, 325, 327; *Purcell* v. *English*, 86 Ind. 34, 44 Am. Rep. 255. In this case the premises were leased by a written lease. It contains no covenant to repair. It is found that prior to the execution of the lease appellant had promised to repair. But the promise is not contained in the lease. There is no more authority for inserting such a provision in the written lease than there would be to insert any other provision as to the terms and conditions of the tenancy. We know of no reason or authority for making an exception to the well established rule that a written contract merges all prior or contemporaneous oral agreements. *Brown* v. *Russell & Co.*, 105 Ind. 46; *Ice* v. *Ball*, 102 Ind. 42.

It is true the jury found that appellant told appellee he was to make repairs, but this was during the tenancy, and even if construed to be a promise to repair it was without consideration. *Purcell* v. *English*, 86 Ind. 34; *Taylor* v. *Lehman*, 17 Ind. App. 585. Moreover, the complaint does not count upon a negligent failure to comply with a contract of leasing by appellee from appellant. It is averred that appellant leased the building to Levy, and appellee leased the upper story from him. It is unnecessary to enter upon a discussion as to what covenants, if any, in the original lease would inure to the benefit of a sub-tenant. There was no contract between appellant and appellee, and no assign-

ment of any contract between appellant and Levy. See, *Mull* v. *Graham*, 7 Ind. App. 561; *Mattler* v. *Strangmeier*, 1 Ind. App. 556; *Burdict* v. *Cheadle*, 26 Ohio St. 393, 20 Am. Rep. 767.

The answers to the interrogatories are inconsistent with the general verdict, but in view of the fact that some confusion exists because of a double set of interrogatories having been submitted to the jury, it is believed that the interests of justice will be best subserved by a retrial, and it is so ordered.

Judgment reversed.