**Daniel MILLER and Polly Miller, Appellants–Plaintiffs,**

v.

**GRAND TRUNK WESTERN RAILROAD, INC., Appellee– Defendant.**

No. 64A05–9907–CV–320.

Court of Appeals of Indiana.

April 26, 2000.

Fred M. Cuppy, Kathryn D. Schmidt, Lily M. Schaefer, Burke, Costanza & Cuppy, LLP, Merrillville, Indiana, Attorneys for Appellant.

Claire Konopa Aigotti, Robert J. Konopa, Konopa & Murphy, P.C., South Bend, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Daniel and Polly Miller (collectively referred to as the "Millers") appeal from the trial court's grant of partial summary judgment in favor of Grand Trunk Western Railroad Company ("Grand Trunk") and also the trial court's denial of their motion to strike an affidavit submitted in support of the motion. We affirm.

### Issues

The Millers present two issues for our review, which we restate as follows:

1. Whether the trial court properly granted partial summary judgment for Grand Trunk on the issue of federal preemption of the Millers' claims for inadequate warning devices at railroad crossings; and

2. Whether the trial court properly denied their motion to strike the affidavit of Stephen J. Hull and accompanying documents submitted by Grand Trunk and properly relied on them in ruling on Grand Trunk's motion for partial summary judgment.

### Facts and Procedural History

On December 10, 1996, Daniel was involved in an automobile-train accident at the intersection of County Road 250 West with a railroad crossing in Valparaiso, Indiana. The crossing was owned and operated by Grand Trunk. The Millers filed a lawsuit against Grand Trunk[1] in Porter Superior Court alleging that Daniel had suffered permanent injuries and pain and suffering as a result of the accident and that Grand Trunk's negligence was the proximate cause of the accident. Grand Trunk answered the complaint, raising the affirmative defense of federal preemption.

Following discovery, Grand Trunk filed a motion for partial summary judgment,

1. The Millers' also named Canadian National Railway as a defendant in their complaint. Canadian National was dismissed from the lawsuit by agreement of the parties prior to the proceedings relevant herein.

alleging that the Federal Railroad Safety Act of 1970[2] preempted the Millers' state common law negligence claim that there were inadequate warning devices at the railroad crossing. The Millers responded, and also filed a cross-motion for summary judgment on the issue of preemption. Their designated evidence included the affidavit of William C. Pugh, retired chief of the Railroad Division of the National Transportation Safety Board, who opined that Grand Trunk failed to comply with federal regulations regarding warning devices. R. 168–70. Grand Trunk's designated evidence included the affidavit of Stephen J. Hull[3] purporting to authenticate 113 pages of documents which he believes indicate that the crossing was upgraded with federal funds and was found to be satisfactorily completed and accepted by the United States Department of Transportation. R. 194–96. The 113 pages of documents attached to the affidavit are largely illegible. R. 197–308.

The Millers subsequently moved to strike the Hull affidavit and the accompanying documents for the following reasons: 1) the accompanying documents were illegible; 2) Grand Trunk acknowledged that it did not have legible copies of the documents and thus, could not provide legible copies; and 3) the conclusions drawn in the affidavit were done "to the best of [Hull's] knowledge" based upon his review of the *attached* records. The Millers asserted that because the affidavit's conclusions relied upon documents which would not be admissible into evidence due to their illegible nature, the affidavit itself was inadmissible pursuant to Trial Rule 56(E). In response, Grand Trunk filed the supplemental affidavit of Steven J. Hull which purported to identify the specific pages of the 113 pages of documentation on which he relied in making the conclusions in his original affidavit. The same 113 illegible documents were attached to the supplemental affidavit.

On June 15, 1999, the trial court entered an order on Grand Trunk's motion for partial summary judgment, as well as both parties' motions to strike the opponents' affidavits. The order, in pertinent part, reads:

> On December 15, 1998 [Grand Trunk] filed a Motion for Partial Summary Judgment on the issue of federal preemption of [the Millers'] claim of inadequate warning devices at the railroad crossing in question in this case.... [The Millers] have moved to strike the affidavit of Steven Hull. Those motions ... were heard May 14, 1999 and taken under advisement by the Court. The Court has now had the opportunity to review the memoranda filed, both in support and in opposition to, those motions and has also had a chance to review the applicable case law in this matter.

> First, the Court denies the motions to strike ... the Hull affidavit[ ] and will consider [it] in ruling on the Motion for Partial Summary Judgment.

> The Court finds that there is no genuine issue as to any material fact regarding the preemption of [the Millers']

---

2. 49 U.S.C. § 20101.

3. The affidavit is actually captioned "Affidavit of Roger Manning." R. 194. The typewritten first line of the affidavit reads, "I, Roger Manning, after being duly sworn on oath...." *Id.* However, "Roger Manning" has been crossed out and "Steven J. Hull" handwritten above it. Also, the typewritten information under the signature line indicates that "Roger Manning" of the Public Affairs Division of the Indiana Department of Transportation was to sign the affidavit. R. 196. "Roger Manning" has again been crossed out and "Steven J.

Hull" handwritten beside it. The acknowledgement indicates that "Steven J. Hull, Engineering Services Manager of the Department of Design of the Indiana Department of Transportation" personally appeared and acknowledged execution of the affidavit before the notary. Thus, despite the caption and repeated references in subsequent motions to the "Affidavit of Roger Manning," there seems to be no dispute that Steven J. Hull actually executed the affidavit, and we will refer to this document herein as the "Hull affidavit."

claim of inadequacy of warning devices and that [Grand Trunk] is entitled to judgment as a matter of law on that issue.

The Court therefore grants [Grand Trunk's] Motion for Partial Summary Judgment and orders judgment entered for [Grand Trunk] and against [the Millers] on the issue of federal preemption of [the Millers'] claim of inadequacy of warning devices at the crossing in question and that issue will not be presented to the jury at trial of this cause.

R. 469.

The Millers timely instituted this interlocutory appeal of both the trial court's denial of their Motion to Strike the Hull affidavit and the grant of partial summary judgment in favor of Grand Trunk on the issue of federal preemption.

### Discussion and Decision

### I. Motion for Summary Judgment

The Millers contend that the trial court erred in granting partial summary judgment for Grand Trunk and denying partial summary judgment for them.

#### A. Standard of Review

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind.1998). We must consider the pleadings and evidence designated pursuant to Indiana Trial Rule 56(C) without deciding their weight or credibility. *Rogers v. Grunden,* 589 N.E.2d 248, 252 (Ind.Ct.App.1992), *trans. denied.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that judgment is warranted as a matter of law. T.R. 56(C); *Hanson v. Saint Luke's United Methodist Church,* 704 N.E.2d 1020, 1022 (Ind.1998).

### B. Federal Preemption of State Negligence Claims

The Federal Railroad Safety Act ("FRSA") was enacted in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To aide in developing solutions to railroad grade crossing safety problems, the FRSA provides that the Secretary of Transportation "as necessary, shall prescribe regulations and issue orders for every area of railroad safety supplementing [existing] laws and regulations." 49 U.S.C. § 20103.

In 1973, Congress enacted the Highway Safety Act ("HSA") which makes federal funds available to the states to improve grade crossings. As a prerequisite to receiving federal funds, the states must "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Additional conditions on the states' use of federal funds to improve grade crossings are set out in regulations promulgated by the Secretary through the Federal Highway Administration ("FHWA"). *See* 23 C.F.R. §§ 646, 655, 924, 1204.

The FRSA specifically provides for preemption:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106. The Supreme Court has held that "covering" is a restrictive term which indicates that Congress intended preemption to lie "only if the federal regulations substantially subsume the subject matter of the relevant state law."

*CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

In *Easterwood,* the Supreme Court addressed the preemptive force of the FRSA with respect to state warning device claims for accidents at grade crossings and held that, of all potential sources of preemption, only the regulations found at 23 C.F.R. sections 646.214(b)(3) and (4), when applicable, preempt state law because only those regulations establish actual requirements as to the installation of particular warning devices. 507 U.S. at 670, 113 S.Ct. 1732. Subsections (b)(3) and (4) outline the types of warning devices deemed adequate for certain types of crossings. Subsection (b)(3)(i) mandates that:

> Adequate warning devices under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
>
> (A) Multiple main line railroad tracks.
>
> (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
>
> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.
>
> (D) A combination of high speed and moderately high volumes of highway and railroad traffic.
>
> (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
>
> (F) A diagnostic team recommends them.

23 C.F.R. § 646.214(b)(3)(i). Subsection (b)(3)(ii) provides that "[i]n individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable." 23 C.F.R. § 646.214(b)(3)(ii). If the requirements of subsection (b)(3) are not applicable, then subsection (b)(4) applies to federally funded installations at grade crossings that do not feature multiple tracks, heavy traffic, and the like. According to subsection (b)(4), "the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA." 23 C.F.R. § 646.214(b)(4). Stated succinctly, the Supreme Court held that state law is preempted only if either subsection (b)(3) or (b)(4) applies, and those subsections apply only if federal funds participated in the installation of warning devices at a particular crossing.

The Seventh Circuit Court of Appeals subsequently considered the question of whether federal funding alone preempts state regulation of grade crossing safety, and held that for warning devices subject to subdivision (b)(4), the Secretary's specific approval of the warning system, in addition to federal financial participation, is necessary for preemption. *Shots v. CSX Transportation, Inc.,* 38 F.3d 304, 308–09 (7th Cir.1994). In so holding, the court stated in dicta that it did "not doubt that the Secretary can approve a warning device before or after its installation or that he can make wholesale as well as retail approvals. We may assume as well that he can act through state safety officials as his delegates." *Id.* at 308. The Seventh Circuit has also held that "there is no preemption of state law adequacy of warning claims until the warning devices are installed and fully operational." *Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 183 (7th Cir.1995). *See also Estate of Martin v. Consolidated Rail Corp.,* 667 N.E.2d 219, 222 (Ind.Ct.App.1996) ("We are persuaded by the *Thiele* reasoning and hold that Martin's tort claim was not

preempted by federal regulations because the railroad crossing warning devices which had been approved at the time of the accident were not yet installed and operational.").

## C. Designated Evidence

In support of its motion for partial summary judgment, Grand Trunk designated evidence showing that an agreement was drafted on February 27, 1981 between Porter County and Grand Trunk "to construct grade crossing and install modern active grade crossing warning devices" at the Grand Trunk railroad crossing with County Road 250 West. R. 32. The construction and installation was to be primarily financed with federal funds. R. 35, 37. Said agreement was approved by the State Highway Commission on June 30, 1981, and by the FHWA on August 17, 1981. R. 38. By letter dated August 28, 1981, Eugene Morris, an employee of the Indiana Department of Highways, informed Grand Trunk's chief engineer that the agreement had been fully executed and approved and that Grand Trunk was authorized to purchase the necessary materials and proceed with the project. R. 31. Exhibit 3 to the agreement shows a single railroad track crossing County Road 250 West. R. 43. The grade crossing improvement installation was complete by the end of 1981. R. 88.

In response, the Millers filed their own motion for partial summary judgment on the issue of preemption, accompanied by the affidavit of William Pugh.[4] Pugh opined that due to railroad crossings several hundred feet to the north and to the south of the Grand Trunk crossing, "gates, or at a minimum, cantilever lights should have been installed at the crossing not only prior to the accident, but in 1981." R. 168. Moreover, he opines that Grand Trunk should have reevaluated the safety of the crossing since 1981.

## D. Summary Judgment as a Matter of Law

Grand Trunk asserts that the Secretary of Transportation's approval of federal financial participation in the now-completed construction and installation of railroad crossing warning devices at County Road 250 West is all that is required for preemption of the Millers' claim for inadequate warning devices. The Millers apparently do not dispute federal financial participation in the project, nor do they dispute that the project as formulated by the February 1981 agreement was complete prior to the accident. They do dispute that the Secretary of Transportation approved the agreement for construction and installation of the railroad grade cross-

---

4. Grand Trunk moved to strike Pugh's affidavit because the opinions expressed therein were based in part upon the Indiana Department of Transportation's statistics for vehicular and train traffic at Grand Trunk's crossing, which, pursuant to 23 U.S.C. section 409, "shall not be subject to discovery or admitted into evidence in a Federal or State Court proceeding or considered for any other purposes in any action for damages arising from any occurrence at a location mentioned [therein]." The trial court denied the motion to strike and expressly stated that it would consider the Pugh affidavit in ruling on the motion for summary judgment. Grand Trunk has not appealed this ruling. However, we agree that the opinions based upon INDOT's statistics would be inadmissible at trial as evidence pursuant to Section 409. *See Indiana Dept. of Transp. v. Overton*, 555 N.E.2d 510, 512 (Ind.Ct.App.1990) ("[A]l-

though [section 409] makes the enumerated documents inadmissible and unavailable for consideration by a factfinder during a trial for damages, [it] does not declare the documents privileged or require that they be kept confidential. Therefore, [section 409] is not a federal statute which, pursuant to IND.CODE Sec. 5–14–3–4(a)(3), prohibits INDOT from disclosing such public records as the ones requested by Overton [during discovery]."). Trial Rule 56(C) requires that affidavits "set forth such facts as would be admissible in evidence...." Because affidavits used for summary judgment purposes are evidential in nature, a court should disregard any inadmissible information contained in the affidavit. *Scott v. City of Seymour*, 659 N.E.2d 585, 592 (Ind.Ct.App.1995). Thus, we base our decision, as we presume the trial court did, on only the admissible information contained in Pugh's affidavit.

ing warning devices. They also contend that the Pugh affidavit supports the conclusion that subsection (b)(3) of the regulation is implicated herein and required either automatic gates with flashing signals at the grade crossing or a diagnostic team justification that gates are not appropriate at that crossing.

The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Choung v. Iemma,* 708 N.E.2d 7, 11 (Ind.Ct.App.1999). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.*

Subsection (b)(3), requiring automatic gates and flashing lights, does not require FHWA approval. *See Easterwood,* 507 U.S. at 670, 113 S.Ct. 1732 ("[U]nder 646.214(b)(3) and (4), a project for the improvement of a grade crossing must *either* include an automatic gate *or* receive FHWA approval if federal funds 'participate in the installation of the [warning] devices.'") (emphasis added). As FHWA approval was sought and obtained for the agreement to upgrade the crossing at issue herein, we can assume that none of the "dangerous conditions" specifically enumerated in subsection (b)(3) exist here. Indeed, there is no evidence that such conditions do exist. Thus, we are confined to considering whether the requirements of subsection (b)(4) were met.

The Agreement designated by Grand Trunk and exhibits attached thereto state that the project is to "[c]onstruct linear high density polyethylene (Cobra X) grade crossing and install modern active flashing light signals" at the County Road 250 West crossing. R. 41. The agree-

ment was examined and approved by an official of the FHWA, obligating federal funds to the project. R. 38. The project was completed in 1981, approximately fifteen years prior to Mr. Miller's accident. At the time the project was completed in full satisfaction of subsection (b)(4), federal preemption attached. Thus, the trial court did not err in granting partial summary judgment for Grand Trunk regarding preemption of the Millers' claim for inadequate warning devices.

## II. Motion to Strike

The Millers also contend that the grant of summary judgment to Grand Trunk should be reversed because the trial court erred in failing to strike the Hull affidavit. They allege that the affidavit does not comply with the requirements of Trial Rule 56(A) in that it: 1) is not made upon Hull's personal knowledge; 2) contains only conclusory statements; and 3) relies upon illegible documents which are not properly authenticated and would be inadmissible in a trial of this matter.

Assuming, without deciding that the Millers' contentions are meritorious, the order of summary judgment must nonetheless stand. We are not bound by the underlying basis on which the trial court entered summary judgment. Rather, we stand in the shoes of the trial court and consider only those materials properly designated and before the trial court pursuant to Trial Rule 56. *Biberstine v. New York Blower Co.,* 625 N.E.2d 1308, 1319 (Ind.Ct.App.1993). We need not decide whether the Hull affidavit and attached exhibits were properly before the trial court. Rather, the remaining materials which were properly before the trial court and thus properly before this court are sufficient to sustain summary judgment in favor of Grand Trunk.

## Conclusion

The trial court properly granted partial summary judgment in favor of Grand Trunk and against the Millers on the issue

of federal preemption of the Millers' claim for inadequate warning devices. Accordingly, the judgment of the trial court is affirmed, and this case is remanded to the trial court for further proceedings.

Affirmed.

BROOK, J., and NAJAM, J., concur.