Jay McCLAIN and Dawn McClain, Appellants–Plaintiffs,

v.

CHEM–LUBE CORPORATION, Robert P. Wasson and Martha Wasson, Individually and d/b/a Chem–Lube Corporation and Challenge, Inc., Appellees–Defendants.

No. 43A05–0104–CV–149.

Court of Appeals of Indiana.

Dec. 10, 2001.

Perry D. Shilts, Melanie L. Farr, Duane J. Snow, Haller & Colvin, P.C., Fort Wayne, IN, for Appellants.

Garrett V. Conover, Kopka, Landau & Pinkus, Crown Point, IN, for Appellee, Chem–Lube Corporation.

Arend J. Abel, Ronald G. Sentman, Leagre Chandler & Millard, LLP, Indianapolis, IN, for Appellee, Challenge, Inc.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Jay McClain and Dawn McClain (the McClains), appeal from the trial court's entry of summary judgment in favor of Appellees–Defendants, Chem–Lube Corporation (Chem–Lube) and Challenge, Inc. (Challenge). Additionally, the McClains appeal the order of the trial court granting Chem–Lube's Motion to Amend Answer.

We reverse and remand.

### ISSUES

The McClains raise five issues on appeal, which we consolidate and restate as follows:

1. Whether the trial court erroneously applied the rebuttable presumption provided under Ind.Code § 34–20–5–1 in determining that the product manufactured by Challenge and sold by Chem–Lube was not defective as a matter of law and complied with applicable codes, standards, regulations, or specifications.

2. Whether the trial court failed to address the duty of Chem–Lube and Challenge to warn about C–AntiSpatter.

3. Whether the trial court erred in granting Chem–Lube's Motion to Amend Answer naming Dana Corporation (Dana) as a nonparty after the applicable limitations period had expired.

*FACTS AND PROCEDURAL HISTORY*

Jay McClain was a welder at the Dana facility in Syracuse, Indiana during the summer and fall of 1998. During that time, the welding department at Dana used an anti-spatter called Spatter–Spatter. The Spatter–Spatter product was a vegetable-based product and milky-white in color. In June or July 1998, Jay McClain began working with the WJ Program, a program used to manufacture the axle for the Jeep Grand Cherokee. The operator in this program applied the anti-spatter to the product while it was cold, on the side A application, and also while it was hot, on the side B application.

Dana experienced clogging problems with Spatter–Spatter that created uneven porous welds on the end parts. Therefore, a new anti-spatter product was introduced to the WJ Program operation. The Chem–Lube salesman, Dan Pruis (Pruis), discussed the product, C–AntiSpatter, with Jay McClain and then watched the application of the C–AntiSpatter on the parts in the WJ program operation. The C–AntiSpatter product was given to Jay McClain in a handheld spray bottle in order to spray the new product on the parts during the WJ Program operation. C–AntiSpatter was represented as being the same as Spatter–Spatter in its make-up and use. The C–AntiSpatter product, however, was soap and water based and amber liquid in color.

Jay McClain was exposed to the fumes and vapors associated with the use of C–AntiSpatter from approximately June 1998 through September 1998. Around this time, he complained of headaches, scratchy throat, stiff neck, nosebleeds, coughing and loss of voice.

On July 19, 1999, the McClains filed a Complaint. On October 13, 1999, their Motion to Amend Complaint was granted. On January 6, 2000, the McClains filed a

Second Amended Complaint and Jury Demand. The McClains stated claims for damages against Chem–Lube and Challenge for their failure to warn of the necessity for the use of protective apparatus when using the product, C–AntiSpatter. Additionally, the McClains initiated a separate claim against both Chem–Lube and Challenge based upon the unreasonably dangerous and defective nature of the product. Finally, Dawn McClain stated a claim for loss of consortium as a result of the injuries suffered by her husband.

On December 29, 2000, Chem–Lube and Challenge filed a joint Motion for Summary Judgment alleging that there were no genuine issues of material fact, and that they were entitled to judgment as a matter of law. Chem–Lube and Challenge also filed the following materials: Designation of Material Facts as to Which There is No Genuine Dispute in Support of Defendant's Motion for Summary Judgment, and Brief in Support of Summary Judgment. On January 31, 2001, the McClains filed a Response to Defendants' Motion for Summary Judgment and a Brief in Opposition to Defendants' Motion for Summary Judgment.

On March 5, 2001, the McClains, Chem–Lube, and Challenge all filed Motions to Strike various portions of designated evidentiary materials filed in opposition to or in support of the Motion for Summary Judgment. On March 7, 2001, Chem–Lube filed a Motion to Amend Answer. The Motion sought leave of the trial court to amend the answer by adding Jay McClain's employer, Dana Corporation, as a nonparty. The trial court granted the motion on March 7, 2001. On March 19, 2001, the McClains filed a Motion to Vacate the Order.

On March 23, 2001, a hearing was held on the various Motions to Strike, the Mo-

tion to Vacate, and the Motion for Summary Judgment. After hearing oral argument, the Motions to Strike were all denied, the Motion to Vacate was taken under advisement, and the Motion for Summary Judgment was also taken under advisement. The trial court requested that the counsel for all parties submit citations concerning OSHA standards and their relationship to the Indiana Products Liability Act. On March 26, 2001, the McClains and Challenge submitted materials to the trial court. The following day the McClains and Challenge filed responses to one another's submissions to the trial court.

On March 27, 2001, the trial court granted summary judgment. The Order provides, in pertinent part, as follows:

The Court having reviewed the designated material and having heard argument of counsel, NOW FINDS:

1. Indiana Code 34–20–5–1 provides as follows:

In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:

(1) was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or

(2) complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana. ·

2. Plaintiffs' designated material, specifically, the Affidavit of W.R. Sawyer, Ph.D., demonstrates that C–AntiSpatter formaldehyde emissions resulting from its use during the welding process complied with Occupational Health and Safety Act Standards for formaldehyde emission.

3. The designated evidentiary matter shows that there is no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment be and is hereby granted in favor of Defendants.

(R. 12). This appeal followed. Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION
#### I. Summary Judgment Standard of Review

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court. *Miller v. Grand Trunk Western R.R., Inc.*, 727 N.E.2d 488, 491 (Ind.Ct.App.2000). We must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* We must consider the pleadings and evidence designated pursuant to Ind. Trial Rule 56(C) without deciding their weight or credibility. *Id.* Summary judgment should be granted only if such evidence shows there is no genuine issue of material fact and judgment is warranted as a matter of law. *Id.*

The party moving for summary judgment has the burden of making a *prima facie* showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App.1999). Once the moving

party meets these two requirements, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* We further note that this court is not permitted to search the record for, or make a decision based upon, materials that were not specifically designated to the trial court. *Collins v. J.A. House, Inc.*, 705 N.E.2d 568, 572 (Ind.Ct.App.1999).

In this case, the trial court entered various findings combining fact and law.

> Specific findings and conclusions are neither required nor prohibited in the summary judgment context. Although specific findings aid appellate review, they are not binding on this court. Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court.

*Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222–223 (Ind.Ct.App.1997) (citations omitted).

## II.  *Indiana Products Liability Rebuttable Presumption*

■ A threshold issue before this court is whether the rebuttable presumption under Ind.Code § 34–20–5–1 was properly applied in the instant case. The McClains argue that the trial court erred in applying the rebuttable presumption found in Ind.Code § 34–20–5–1, as set out in the March 27, 2001 Order, because OSHA standards were not applicable under the facts and circumstances of the present case. We find that the rebuttable presumption was appropriate to the facts and circumstances of the present case. However, after finding the statutory rebuttable presumption, the trial court incorrectly terminated review. Our supreme court has succinctly stated the legal significance and nature of a presumption:

> a presumption of law is not evidence nor should it be weighed by the factfinder as though it had evidentiary value. Rather, a presumption is a rule of law enabling the party in whose favor it operates to take his case to the trier of fact without presenting evidence of the fact presumed. It serves as a challenge for proof and indicates the party from whom such proof must be forthcoming. When the opponent of the presumption has met the burden of production thus imposed, however, the office of the presumption has been performed; the presumption is of no further effect and drops from the case.

*Sumpter v. State*, 261 Ind. 471, 306 N.E.2d 95, 99 (1974) (citations and internal quotations omitted). Therefore, a rebuttable presumption does not shift the burden of proof but it does impose upon the opposing party a burden of producing evidence. *Id.* If the opponent produces evidence that rebuts the presumption, it serves no further purpose. *Id.* Thus, our inquiry does not end once Chem–Lube and Challenge submitted evidence invoking the presumption.

### A.  *Ind.Code § 34–20–5–1(1)*

■ We now turn to the question of whether the McClains designated admissible evidence to rebut the statutory presumption found in Ind.Code § 34–20–5–1(1). The trial court granted summary judgment on the basis that Chem–Lube and Challenge "complied with OSHA standards for formaldehyde emission." (R. 12). The trial court stated that the McClains' designated material, specifically, the Affidavit of W.R. Sawyer, Ph.D., demonstrated that C–AntiSpatter formaldehyde emissions resulting from its use during the welding process complied with OSHA standards for formaldehyde emis-

sion. However, the trial court did not specifically address whether the McClains had designated evidence sufficient to rebut the presumption that such compliance is proof that the C–AntiSpatter product is not defective and that Chem–Lube and Challenge are not negligent. Moreover, the trial court did not specifically address whether there was designated evidence to establish that C–AntiSpatter was "in conformity with the generally recognized state of the art" or whether the McClains designated evidence sufficient to rebut the presumption that a state of the art product is not defective and that Challenge and Chem–Lube are not negligent in producing or selling a state of the art product. *See* Ind.Code § 34–20–5–1(1).

In the instant case, a showing that C–AntiSpatter complied with the OSHA standards for formaldehyde emission made it incumbent upon the McClains to designate admissible evidence to rebut the statutory presumption. In an attempt to do so, the McClains designated various portions of depositions from Jay McClain's doctors, experts, and fellow Dana employees. The trier of fact was presented with opposing versions of material fact rendering summary judgment improper. With that, we find that the designated evidence supported the McClains' contention that there is a genuine issue of material fact as to whether or not C–AntiSpatter was defective in nature when used in its reasonably expected manner. *See Miller,* 727 N.E.2d at 491.

### B. *Ind.Code § 34–20–5–1(2)*

The McClains also argue that the trial court erred in finding that there were no genuine issues of material fact to preclude the entry of summary judgment against them on their products liability claims on the basis of OSHA standards. *See* Ind. Code § 34–20–5–1(2). Moreover, the McClains argue that neither Chem–Lube nor Challenge designated any evidentiary materials or alleged any material fact to which there was no genuine issue that related to OSHA standards. In addition, the McClains argue that the trial court failed to construe all facts and inferences in favor of the non-moving party when it erroneously interpreted designated evidentiary material in a manner that supported Chem–Lube and Challenge's Motion for Summary Judgment. Specifically, the McClains contend that the trial court erred when it construed the affidavit of W.R. Sawyer, Ph.D. in favor of Chem–Lube and Challenge.

On the other hand, Chem–Lube and Challenge maintain that the trial court's reliance upon the non-movant's designated evidence is entirely proper due to the fact that once evidence has been designated to the trial court by one party, that evidence is deemed designated and the opposing party need not designate the same evidence. *See Powell v. American Health Fitness Center of Fort Wayne, Inc.,* 694 N.E.2d 757, 759–60 (Ind.Ct.App.1998). Therefore, Chem–Lube and Challenge maintain that the affidavit of Dr. Sawyer was properly designated and clearly established the existence of an OSHA standard and that C–AntiSpatter was in compliance.

The affidavit of Dr. Sawyer stated, "the legal OSHA standard for formaldehyde was not exceeded in my replication study." (R. 327–28). However, it also declared that the levels of formaldehyde collected in his study were an under-representation and dilution of the type of exposure that Jay McClain suffered by working at Dana with C–AntiSpatter due to the fact that the study was performed under a high-flow laboratory fume hood. Thus, Dr. Sawyer's statements point to a genuine issue of material fact relating to whether or not the by-products of C–AntiSpatter would ex-

ceed OSHA standards in the Dana workplace.

We agree with the McClains that Chem–Lube and Challenge are incorrect when they point to his statements as proof of compliance with such standards. We find that the evidentiary materials that were properly designated to the trial court reflect the existence of a factual dispute on the issue of compliance with OSHA standards. As stated above, a rebuttable presumption does not shift burden of proof but it does impose upon the opposing party a burden of producing evidence. *See Sumpter*, 306 N.E.2d at 99. We find that the McClains produced evidence that rebuts the presumption of Ind.Code § 34–20–5–1(2). Therefore, the rebuttable presumption serves no further purpose. *Id.* Thus, we find that the trier of fact was presented with opposing versions of material fact and summary judgment was improper.

### III. *Duty to Warn*

Next, the McClains argue that Chem–Lube and Challenge had a duty to warn about C–AntiSpatter. Specifically, the McClains argue that the trial court failed to address the issue of duty to warn, that a genuine issue of material fact exists, and, therefore, that the entry of summary judgment should have been precluded.

■ The duty to warn consists of two duties: (1) to provide adequate instructions for safe use, and (2) to provide a warning as to dangers inherent in improper use. *Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155, 161 (Ind.Ct.App. 1997), *trans. denied.* Indiana law states that a manufacturer or supplier has a duty to warn all who may reasonably be foreseen as coming in contact with a dangerous product. *Jarrell v. Monsanto Co.,* 528 N.E.2d 1158, 1162 (Ind.Ct.App.1988), *trans. denied.* The adequacy of warnings is classically a question of fact reserved for

the trier of fact and, therefore, it is usually an inappropriate matter for summary judgment. *Id.*

■ In addition, under Indiana law, when a product possesses or contains a latent defect, the manufacturer has a duty to warn with respect to those latent dangerous characteristics, and this duty exists even if there is no defect in the product itself. *Natural Gas Odorizing, Inc.,* 685 N.E.2d at 161.

Chem–Lube and Challenge argue that they neither knew nor had reason to know that the product was likely to be dangerous when used in a foreseeable manner due to the lack of injuries attributable to C–AntiSpatter. Therefore, they argue that the risk of injury was unknown and unforeseeable, rendering summary judgment proper. This assertion, however, over-simplifies and understates the law relating to the duty to warn of product defects as developed in Indiana. *See Jarrell v. Monsanto Co.,* 528 N.E.2d 1158, 1162 (Ind.Ct.App.1988), *trans. denied; Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155 (Ind.Ct.App.1997), *trans. denied.*

On the other hand, the McClains claim that the designated evidence illustrates that Chem–Lube and Challenge had sufficient actual and constructive knowledge of the ingredients making up the C–AntiSpatter product, the occurrence of smoke and vapor when the product is applied to a heated weld, and the expected by-products of such a welding process, to be charged with the duty to provide a warning reasonably anticipated to protect purchasers and end-users of the product.

The Record shows that there were significant problems with the Material Safety Data Sheet (MSDS) provided by Chem–Lube to Dana when C–AntiSpatter was in use. When the product was originally brought into the plant, the MSDS for C–

AntiSpatter was compared to the MSDS for Spatter–Spatter. The MSDS reports were found to be very similar. No additional warnings or safety requirements were noted on the C–AntiSpatter MSDS. The purpose of reviewing the MSDS information was to verify that Dana did not have to do anything special to handle or use C–AntiSpatter. When the Dana employees began experiencing health problems allegedly related to the use of the product, a discrepancy was noted on the MSDS about the appearance of the product, and a correct MSDS was requested. It was discovered that the MSDS for C–AntiSpatter noted that the product was milky white in color, when in fact the C–Anti Spatter was amber liquid in color. The second MSDS received at Dana noted again that C–AntiSpatter was milky white in color. The final MSDS received by Dana, however, contained information that the C–AntiSpatter was amber liquid in color. It also provided an additional warning regarding the use of a respirator during product mists.

▮▮▮ In reviewing the adequacy of a warning, the court will look at the factual content, the manner in which the content is expressed, and the adequacy of the method of conveying the warning. *Jarrell,* 528 N.E.2d at 1162. Clearly, the McClains designated sufficient evidence creating an issue of fact as to whether the warnings provided to Dana by Chem–Lube were inadequate to alert the user of the product of its dangers due to improper use.

The Record reflects that Challenge acknowledged that it was aware that C–AntiSpatter was not merely soap and water but it also contained a product known as Foam Ban, which contains harmful and carcinogenic ingredients, and that C–AntiSpatter could produce fumes, which could cause irritation to the user. In addition, Challenge admitted that it would expect formaldehyde to be one of the by-products of the welding process while using C–AntiSpatter. However, Challenge provided no direct warning to Dana or to any of Dana's welders using C–AntiSpatter. It was the practice of Challenge to provide Chem–Lube with an MSDS, and then to use an MSDS prepared by Chem–Lube when a product was shipped directly to a purchaser from Challenge's factory. This practice contravenes Indiana products liability law, which requires and imposes a non-delegable duty on the part of manufacturers to warn users of their products of hidden latent defects in the product. *Natural Gas Odorizing, Inc.,* 685 N.E.2d at 161.

The McClains designated evidence demonstrating that neither Chem–Lube nor Challenge provided adequate instructions in relation to the safe use and handling of C–AntiSpatter. The designated evidence shows that both Chem–Lube and Challenge knew that the product was to be used in conjunction with high temperatures that occurred as a result of the hot welding process. Moreover, Chem–Lube and Challenge consistently maintained that no protective equipment was necessary for the product to be used safely.

Consequently we find that there are genuine issues of material fact as to whether the risks inherent in the use of C–AntiSpatter were unknown or unforeseeable, and whether or not Chem–Lube and Challenge had a duty to warn of the dangers inherent in the use of the product. *See Miller,* 727 N.E.2d at 491. Therefore, the trial court erred in failing to address this issue in its Order.

### IV. *Nonparty Defense*

▮ The McClains contend that the trial court erred in granting Chem–Lube's Motion to Amend Answer naming Dana as a nonparty because it was not filed until approximately six months after the appli-

cable period of limitations had expired. Chem–Lube argues, however, that we should decline review of this issue because the McClains failed to preserve it for appeal. We find that the McClains did not waive this issue by virtue of their Motion to Vacate, which argued the applicable period of limitations issue and asked the trial court to vacate its Order granting Chem–Lube's Motion to Amend Answer.

An amendment of a pleading to assert a nonparty defense is governed by Ind.Code § 34–51–2–16, which states as follows:

A nonparty defense that is known by the defendant when the defendant files the defendant's first answer shall be pleaded as a part of the first answer. A defendant who gains actual knowledge of a nonparty defense after the filing of an answer may plead the defense with reasonable promptness. However, if the defendant was served with a complaint and summons more than one hundred fifty (150) days before the expiration of the limitation of action applicable to the claimant's claim against the nonparty, the defendant shall plead any nonparty defense not later than forty-five (45) days before the expiration of that limitation of action. The trial court may alter these time limitations or make other suitable time limitations in any manner that is consistent with:

(1) giving the defendant a reasonable opportunity to discover the existence of a nonparty defense; and

(2) giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim.

■ The decision whether to grant or deny a motion to amend is within the discretion of the trial court and may be reversed only upon a showing of abuse of discretion. *United of Omaha v. Hieber,*

653 N.E.2d 83, 87 (Ind.Ct.App.1995), *trans. denied.* The trial court granted Chem–Lube's Motion to Amend Answer. The McClains then challenged the trial court's ruling in their Motion to Vacate. The trial court did not rule on the McClains' Motion. Thus, we must work under the assumption that the trial court denied the McClains' Motion, making the trial court's Order, granting Chem–Lube's Motion to Amend Answer, a final appealable order because it essentially determined the rights of the parties involved. *See American Cyanamid Co. v. Stephen,* 600 N.E.2d 1387, 1388 (Ind.Ct.App.1992), *trans. denied.*

In the instant case, the McClains filed their original Complaint on July 19, 1999. The McClains filed an Amended Complaint on October 18, 1999. Chem–Lube filed an Answer on December 13, 1999. On January 6, 2000, the McClains were granted leave to amend their Complaint, adding Challenge as a party defendant. The Second Amended Complaint was filed on January 6, 2000, and Chem–Lube's Answer was filed on January 27, 2000. However, Chem–Lube's Motion to Amend Answer to add a nonparty defense was not filed until March 7, 2001, approximately six months after the applicable period of limitations had expired. The McClains' causes of action accrued in September 1998. Thus, the applicable period of limitations for all causes of action against Chem–Lube was two years, such periods of time having run on or about September 2000.

Ind.Code § 34–51–2–16(1)(2) permits a trial court to alter the 150/45 day time period. The statute itself clearly states, however, that a trial court's ability to alter the time period is restrained by the outer limits set by the expiration of the applicable period of limitations.

Chem–Lube claimed that it first gained knowledge of the nonparty defense on

**1106**

January 25, 2001 when it was first made aware of the identity and opinions of the McClains' expert. It is the contention of Chem–Lube that while formulating a Motion to Strike the Affidavit of William Sawyer, Ph.D., offered with Plaintiff's Response to Defendant's Motion for Summary Judgment, Chem–Lube was first made aware of the potential fault of Dana Corporation.

A review of the Record reveals the fact that Chem–Lube had ample opportunity prior to the running of the applicable period of limitations to identify and name Dana as a nonparty. In their complaint, the McClains identified Dana as the workplace where the injury occurred. Additionally, Chem–Lube participated in various depositions that further augmented the facts relating to Dana. It is irrelevant when and whether Chem–Lube received an affidavit from the McClains' expert to the issue of whether they had an opportunity to develop their theory of Dana as a nonparty. The Record reflects that Chem–Lube had an opportunity to develop its theory of Dana as a nonparty defense prior to the receipt of the affidavit from the McClains' expert. Therefore, Chem–Lube had ample opportunity to discover and assert the existence of its nonparty defense, and thus was not entitled to receive modification of the time frame set forth in Ind.Code § 34–51–2–16(1)(2).

We find that Chem–Lube failed to satisfy the threshold requirement of Ind.Code § 34–51–2–16, namely, asserting any nonparty defense in its first answer. Further, even taking as true Chem–Lube's assertion that it was unaware of the defense until sometime after the answer was filed, Chem–Lube has failed to show that it pled the defense with reasonable promptness. See Ind.Code § 34–51–2–16. Consequently, we find that the trial court abused its discretion in granting Chem–Lube's mo-

tion to amend the pleadings. *See United of Omaha,* 653 N.E.2d at 87.

*CONCLUSION*

For all the foregoing reasons, we conclude that the trial court erred in granting Chem–Lube and Challenge's joint Motion for Summary Judgment. We also conclude that the trial court erred in granting Chem–Lube's Motion to Amend Answer.

Reversed and remanded for further proceedings consistent with this opinion.

SHARPNACK, C.J., and NAJAM, J., concur.