**FIFTH THIRD BANK,**
Appellant/Cross–
Claimant,

v.

**INDIANA INSURANCE COMPANY,**
Appellee/Cross–Defendant.

No. 83A01–0112–CV–472.

Court of Appeals of Indiana.

July 24, 2002.

Arnold H. Brames, Brames & Oldham, Terre Haute, IN, Attorney for Appellant.

Charles T. Jennings, Thomas R. Haley III, Jennings Taylor Wheeler & Bouwkamp, P.C., Carmel, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant/Cross–Claimant, Fifth Third Bank (Bank), appeals the trial court's grant of summary judgment in favor of Appellee/Cross–Defendant, Indiana Insurance Company (Indiana).

We affirm.

### ISSUE

Bank raises one (1) issue on appeal, which we restate as follows: whether the trial court erred in granting summary judgment in favor of Indiana.

### FACTS AND PROCEDURAL HISTORY

On November 15, 2000, Bank filed a Motion for Summary Judgment against Indiana. On February 8, 2001, a hearing was held on Bank's motion. On July 27, 2001, the trial court filed its Findings of

Fact, Conclusions of Law and Entry of Judgment. The trial court found and concluded as follows:

1. On or about February 16, 1995, fire occurred at the residence of James and Mary Hardy, R.R. 2, Clinton, Indiana 47842.

2. At the time of the fire, Hardys insured the premises through [Indiana], Policy No. 47 323 889 with effective dates of coverage from January 19, 1995 through April 19, 1995.

3. James P. and Mary L. Hardy are named insureds under the [Indiana] policy.

4. [Bank], formerly Citizens Bank of Western Indiana is a mortgagee under the [Indiana] policy.

5. Subsequent to the fire loss, Citizens Bank of Western Indiana was merged with [Bank].

6. Following the fire loss, James P. and Mary Hardy submitted a Proof of Claim for insurance proceeds pursuant to the policy provisions.

7. [Bank] did not inquire into pursuing a claim with [Indiana] for fire proceeds until July 13, 1995.

8. In response to [Bank's] inquiry, counsel for [Indiana] provided the bank with a blank Proof of Loss form and a copy of the applicable policy of insurance on August 9, 1995.

9. [Bank] provided a completed Proof of Loss form to [Indiana] dated October 11, 1995. The bank's Proof of Loss requested Twenty–Seven Thousand Seven Hundred Eighty–Two Dollars and 43/100 ($27,782.43).

10. After receipt of the bank's Proof of Loss, counsel for [Indiana] advised counsel for [Bank] that [Indiana] was having problems with Mr. and Mrs. Hardy substantiating their claim, but that a decision on the Hardy claim would be made shortly at which time [Indiana] would adjust [Bank's] claim.

11. [Indiana] denied James P. and Mary Hardy's claim for insurance proceeds on January 16, 1996.

12. On February 13, 1996, [Indiana] forward[ed] [Bank's] counsel a copy of the settlement draft made payable to the bank in the amount of Twenty–Seven Thousand Seven Hundred Eighty–Two Dollars and 43/100 ($27,782.43) with a proposed Release. The bank was advised to execute the Release in exchange for the original settlement draft.

13. The bank refused to execute the Release and requested an additional Two Thousand One Hundred Forty Dollars and 95/100 ($2,140.95) from [Indiana] for attorneys' fees and costs.

14. On March 22, 1996[,] [Indiana] forwarded the bank's counsel the original settlement draft in the amount of Twenty–Seven Thousand Seven Hundred Eight–Two Dollars and 43/100 ($27,782.43) representing the amount of the bank's Proof of Loss. [Indiana] advised the bank that no additional amounts were due to the bank under the [Indiana] policy.

15. [Bank] now seeks additional attorneys' fees and costs totaling Twenty–Nine Thousand Eighty–Five Dollars and 32/100 ($29,085.32) since the date of the fire for attorneys' fees and costs incurred through October 19, 2000 by [Bank] for pursuing a foreclosure claim, complaint on the note and mortgage, and for defending the Hardys' tort claims against the bank. The additional attorneys' fees also include expenses incurred by the bank for pursuing its claim in bankruptcy and for pursuing its claims against the Hardys and the other lienholders including Woodco, Graber Brothers Construction, Daviess County Metal Sales and Carter Crouch. All attorneys' fees and costs incurred by the

bank accrued after the date of the fire loss at the Hardy residence.

16. Upon review of the applicable policy of insurance, the Court concludes that [Bank's] right to policy proceeds were limited to the amount due on the note and mortgage at the time of loss.

17. Indiana case law has defined the term identified in [Indiana's] mortgagee clause "as interests appear" to mean the rights of the mortgagee to the insurance proceeds as of the time of the loss.

18. The bank's right to insurance proceeds as of the time of the loss does not include proceeds for events transpiring after the loss.

19. The policy of insurance issued to James and Mary Hardy, at page 10 of 16 under paragraph 10, entitled "Loss Payment," requires [Indiana] to adjust all losses with the Hardys and first attempt to reach an agreement with the Hardys.

20. The mortgagee clause at page 10 of 16 of the policy under paragraph 12 indicates that the Loss Payment section of the policy applies to the mortgagee thereby requiring the mortgagee to first allow [Indiana] to adjust the loss directly with its insured.

21. The policy of insurance at page 11 of 16 allows [Indiana] to deny payment to the Hardys and still pay the mortgagee by either subrogating to the rights of the mortgagee or at the insurance company's option, paying the mortgagee the whole principle [sic] plus accrued interest in exchange for a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. The Court concludes that [Indiana] attempted to choose the first option by becoming subrogated to the rights of the mortgagee. Since the bank refused to execute the Release provided with the original copy of the settlement draft, [Indiana's] attempts to exercise this portion of the

policy with the mortgagee were thwarted.

22. The Court further finds that the mortgagee clause implies that subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim. The policy language implies that the mortgagee may need to pursue an action against the Hardys to make itself whole.

23. The Court further finds that it is implicit in Indiana case law that a foreclosure after the loss is possible and will not affect the insurer's liability to the mortgagee.

24. Since [Bank] did not file its Proof of Loss as required by the policy of insurance until October 11, 1995, approximately eight (8) months after the date of loss, the Court finds that the offer to make payment on February 13, 1996 and eventual payment made on March 22, 1996 were not unduly delayed. [Bank] delayed pursuing its claim under the policy for a considerable time following the fire and [Indiana] made payment to [Bank] within two (2) months of denial of the Hardy claim.

25. Accordingly, the Court determines no additional amounts are due and owing from [Indiana] to [Bank] pursuant to the policy of insurance to James P. and Mary Hardy. No additional genuine issues of fact remain for trial concerning [Bank's] claims against [Indiana] and therefore the Court hereby grants summary judgment in favor of [Indiana] as to [Bank's] claims against [Indiana].

(Appellant's App. pp. 404–09).

On October 29, 2001, Bank filed a Motion to Correct Errors. In its motion, Bank argued that the trial court erred in its Findings of Fact 9, 15, and 16. Bank also argued that the trial court erred in its Conclusions of Law 17, 18, 23, and 25. On

November 14, 2001, the trial court denied Bank's Motion to Correct Errors.

Bank now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

Bank maintains that the trial court erred in granting summary judgment in favor of Indiana. Specifically, Bank contends that the trial court's Findings of Fact 9 and 15 are contrary to the evidence. Bank also contends that the trial court's Conclusions of Law 17, 18, 23, and 25 are contrary to law.

### Standard of Review

Our standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Miller v. Grand Trunk Western R.R., Inc.*, 727 N.E.2d 488, 491 (Ind.Ct.App.2000). We must consider the pleadings and evidence designated pursuant to Ind. Trial Rule 56(C) without deciding their weight or credibility. *Id.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that judgment is warranted as a matter of law. *Id.*

In this case, the trial court entered specific findings of fact and conclusions of law.

Specific findings and conclusions are neither required nor prohibited in the summary judgment context. Although specific findings aid appellate review, they are not binding on this court. Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court.

*Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222–23 (Ind.Ct.App.1997) (citations omitted). Additionally, this appeal involves the meaning of certain language contained in an insurance policy.

The provisions of an insurance contract are subject to the same rules of construction as other contracts, and construction of a written contract is a question of law for which summary judgment is particularly appropriate. When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. If the language of the policy is clear and unambiguous, it must be given its plain and ordinary meaning. If the language of the policy is ambiguous, though, the policy should be construed in favor of the insured to further the policy's basic purpose of indemnity. An ambiguity exists if the policy is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. An ambiguity does not exist simply because a controversy exists between parties, each favoring an interpretation contrary to the other.

*Great Lakes Chemical Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind.Ct.App.1994), *reh'g denied* (citations omitted).

### Findings of Fact 9 and 15

In support of its argument that Finding of Fact 9 is contrary to the evidence, Bank states:

The trial court erred when it found that the "bank's Proof of Loss requested Twenty Seven Thousand Seven Hundred Eighty–Two and 43/100 Dollars ($27,-782.43)" when, in fact, the Bank's initial Proof of Loss detailed that the "Loss and Damage was the balance of the mortgage indebtedness on 8/4/95." That mortgage note balance (indebtedness) is subject to unceasing changes to reflect accruing interest and costs of collection.

(Appellant's Brief pp. 15–6). Bank believes that it is owed the balance of the mortgage indebtedness, which includes the amount of its principal balance plus inter-

est and late fees as of the time of the loss, as well as accrued interest, accrued costs of collection and accrued attorneys' fees incurred in its collection efforts. While Bank's belief may be relevant, it does not make Finding of Fact 9 contrary to the evidence. Finding of Fact 9 simply states that Bank completed a Proof of Loss form, requesting $27,782.43 from Indiana. This Finding of Fact is supported by the evidence, as a copy of the Proof of Loss form is in the record. The form clearly shows that on October 11, 1995, Bank requested $27,782.43 from Indiana. Therefore, we cannot find that Finding of Fact 9 is contrary to the evidence.

Next, Bank argues that Finding of Fact 15 is contrary to the evidence. Bank maintains that the "trial court made a prejudicial mistake of fact in finding that the Bank sought attorneys' fees for defending the Hardys' tort claim against the Bank. This invalid premise inexorably resulted in the trial court's Conclusion of Law and Judgment against the Bank's claim." (Appellant's Brief p. 17). In its Memorandum of Law in Support of Fifth Third Bank's Motion for Summary Judgment, Bank argued:

> The note, mortgage and the above case law support [Bank's] position that the *"mortgage debt"* includes the principal, costs, attorneys['] fees and accruing interest *until paid.* Such payment would provide [Bank] with closure and entitle Indiana to a "full" assignment of the note and mortgage. To compel [Bank] to accept an inadequate amount after [Bank's] litigation in the foreclosure, the Hardys' bankruptcy, the defense of the Hardys' lawsuit against [Bank] is not what was intended by [Bank] when they accepted the Indiana policy as the additional required security for its loan on the premises. Even if it can be argued that [Bank] was obligated to defend itself against the tort claims of the Hardys in this action, at the very least,

[Bank] is entitled to a judgment against [Indiana] for the remaining principal balance, interest, and any and all attorneys['] fees and costs incurred by [Bank] **in the prosecution of its foreclosure action and the Hardys' bankruptcy.** (Appellant's App. pp. 361–62) (emphasis supplied).

In Finding of Fact 15, the trial court stated, in pertinent part, as follows: "[Bank] now seeks . . . attorneys' fees and costs . . . for defending the Hardys' tort claims against the bank." (Appellant's App. p. 406). Bank, in its Memorandum of Law, stated that the defense of the Hardys' lawsuit against it was not what was intended when it accepted the Indiana policy as the additional required security for its loan. The very next sentence in the Memorandum of Law states, "[e]ven if it can be argued that [Bank] was obligated to defend itself against the tort claims of the Hardys in this action, at the very least, [Bank] is entitled to . . ." (Appellant's App. pp. 361–62). It is clear that Bank contemplated reimbursement for its attorneys' fees and costs in its defense of the Hardys' lawsuit against it. This is especially true when considering the fact that Bank argued that if it was obligated to defend itself against the Hardys' tort claims, it was, at the very least, entitled to a judgment against Indiana for the remaining principal balance, interest, and any and all attorneys' fees and costs incurred by it in the prosecution of its foreclosure action and the Hardys' bankruptcy. With the above in mind, we find that the Bank raised the issue of reimbursement for its attorneys' fees and costs in its defense against the Hardys' tort claims. Therefore, we cannot find that Finding of Fact 15 is contrary to the evidence.

*Conclusions of Law 17, 18, 23, and 25*

 Bank argues that the trial court erred in determining that it was only owed

insurance proceeds as of the time of the loss, i.e. $27,782.43, from Indiana. We disagree.

It is undisputed that the Hardys' homeowner's policy contained a "standard" or "union" mortgage clause. "[I]f the mortgagee is listed under a New York, or standard, or union, mortgage clause, it is universally held that the mortgagee has entered into a separate contract with the insurer and is entitled to payment regardless of the mortgagor's acts or omissions." *Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 400 (Ind.Ct.App.1990). The policy contained the following provision:

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, *as interests appear.* If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

. . .

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest.

In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

(Appellant's App. p. 66–7) (emphasis added).

In the present case, Indiana paid Bank the mortgage's principal balance plus accrued interest as of the time of the loss, and not for any subsequent costs and/or attorneys' fees incurred by Bank. The contested phrase here is "as interests appear," as applied in Conclusions of Law 17, 18, 23, and 25. Bank maintains that this phrase covers the mortgage's principal balance plus interest and late fees as of the time of the loss, as well as accrued interest, accrued costs of collection and accrued attorneys' fees incurred in its collection efforts. Whereas, Indiana maintains that this phrase only covers the mortgage's principal balance plus accrued interest as of the time of the loss.

In *Loving v. Ponderosa Systems, Inc.*, 444 N.E.2d 896, 906–07 (Ind.Ct.App.1983), *vacated on other grounds*, 479 N.E.2d 531 (Ind.1985), this court held:

Case law has recognized that the provision in mortgages or insurance policies calling for insurance proceeds to be paid to the mortgagee "as its interest appears" are words of art and entitle the mortgagee to the proceeds to the extent of the mortgage debt. The analysis underlying this position posits the mortgagee's interest as one in the indebtedness, not in the property, and also finds that under such standard, or union, mortgage clause the mortgagee has entered into a separate agreement with the insurer.

. . .

It is well established that the rights of the mortgagee to the insurance proceeds are determined as of the time of the loss. Therefore, a foreclosure action

brought after the loss will not necessarily affect the insurer's liability to the mortgagee.

*Id.* (citations omitted). Additionally, it has been stated that "as their interest may appear" refers to:

> debts owing the insured, and mean that the insurer will pay the mortgagee to the extent of his lien at the time of the loss. The terms refer, therefore, not to an interest in the property insured, but to the payment of the loss; and not the mortgagee's interest in the property, but the interest which he has in the indebtedness.

5A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 3401 285–86 (1970). Furthermore, other jurisdictions have similar interpretations of the meaning of the phrase "as interests appear." *See, e.g., New Hampshire Ins. Co. v. American Emp. Ins. Co.,* 208 Kan. 532, 492 P.2d 1322, 1325 (1972) ("Again the authorities are clear that a clause making a fire insurance policy payable to named insureds as their interest may appear refers to the interests existing at the time of the loss."); *Cooper v. Alford,* 446 So.2d 1093, 1094 (Fla.Dist.Ct.App.1984) ("Absent an agreement or provision to the contrary, a loss-payable mortgagee with interest as may appear may recover the amount of that interest at the time of the loss despite recovery under the loss-payable mortgagee's separate policy in which he is the named insured.").

 As stated above, "when interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. If the language of the policy is clear and unambiguous, it must be given its plain and ordinary meaning." *Great Lakes Chemical Corp.,* 638 N.E.2d at 850 (citation omitted). The phrase "as interests appear," while not necessarily a well-known phrase outside of the insurance in-

dustry, has been consistently interpreted by various courts and other sources as referring to monies owed on an insurance policy as of the time of the loss, and not for any subsequent time or for any subsequent costs that may occur. With this in mind, we find that the insurance policy at issue here is clear and unambiguous. Indiana appropriately paid Bank the mortgage's principal balance plus accrued interest as of the time of the loss. Therefore, we find that the trial court did not err in granting summary judgment in favor of Indiana.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in granting summary judgment in favor of Indiana.

Affirmed.

BROOK, C.J., and SHARPNACK, J., concur.