FRANKLIN FIRE INSURANCE COMPANY *v.* NOLL ET AL.

[No. 17,246. Filed January 29, 1945.]

*Ramon S. Perry,* of Fort Wayne, for appellant.

*James M. Barrett, Jr., Phil M. McNagny, Otto E. Grant, Jr.,* and *Leigh L. Hunt,* all of Fort Wayne, for appellee.

HAMILTON, J.—This action was instituted by the appellant, Franklin Fire Insurance Company, against the appellees, as the owners and landlord of a certain building to recover in subrogation the amount which the appellant had paid to one of its insured as damages for the destruction of a stock of ladies' apparel and other personal property, caused by water on April 29, 1941.

The complaint alleged in substance the following facts: That the plaintiff is a corporation duly authorized to do business in the State of Indiana and is and was doing business as a fire insurance company; that prior to April 29, 1941, the plaintiff issued a policy of insurance to Nobb's Fashions, Inc., doing business as Nobbson's, covering mercantile stock held for pur-

poses of sale in the premises occupied by the insured at 928 South Calhoun Street, Fort Wayne, Allen County, Indiana, against the hazards of fire and water damage, said policy of insurance being in the principal sum of $5000; that said policy of insurance was in full force and effect on April 29, 1941. It is further averred that the plaintiff's assured, said Nobb's Fashions, Inc., leased the premises at 928 South Calhoun Street, Fort Wayne, Indiana, from the defendants, under and by virtue of a certain written lease, a copy of which said lease is filed with and made a part of the complaint and marked "Exhibit A"; that said leased premises covered a certain street floor room and the basement room thereunder; that on April 29, 1941, water was discovered leaking from the upper floors of the building, in which the leased premises were located, through the ceiling and walls and into the room occupied by the plaintiff's insured; that the stock of goods in the insured's room covered by said policy of insurance was damaged to the amount of $2,655.13 by said water, which said amount the plaintiff was obligated to and did pay to its said insured, and by reason of said payment said plaintiff became subrogated to all rights, claims, demands, and interests of its insured, Nobb's Fashions, Inc., doing business as Nobbson's, to the amount and extent of such payment.

The complaint then charges that said loss and damage to said stock of wearing apparel, goods, and merchandise was caused by the negligence of the defendants, appellees herein, in each of the following particulars, to wit:

"5. Plaintiff further avers that the defendants and each of them had carelessly and negligently permitted their plumbing in the said Noll Building to become in a bad state of repair, in that the pipe

or pipes in the upper floors had begun to leak, thus allowing great quantities of water to flow through the building and into the premises occupied by the plaintiff's said insured.

"6. Plaintiff further avers that the defendants and each of them were careless and negligent in that they failed to properly inspect and check the said plumbing pipe and equipment, and because of said carelessness and negligence, the said plumbing pipe and equipment had become defective and worn out and permitted water to escape from said pipe and to run over onto and into the premises occupied by the said plaintiff's insured.

"7. Plaintiff further avers that the defendants and each of them were further careless and negligent in that an ordinary prudent person could have known and should have known in the operation and maintenance of their said building, that the pipes and plumbing equipment were defective, but that defendants failed to use ordinary care which an ordinary prudent person would have and could have used, and because of said negligence and carelessness on the part of the defendants, water was permitted to escape from the defendants' plumbing equipment into and onto the premises occupied by the plaintiff's said insured.

"8. Plaintiff further avers that the defendants were careless and negligent in not keeping and maintaining said pipes and plumbing equipment in a good state of repair, in that said repairs were not properly made in a good workmanlike manner; and because of said carelessness and negligence, water escaped from the pipes and equipment of the defendants into and upon the property of the plaintiff's said insured.

"9. Plaintiff further avers that the defendants and each of them were careless and negligent in using pipes and plumbing equipment which were out of repair, which defects and lack of repairs were unknown to this plaintiff, who had no access to them, and no right of access to them, but could have been and should have been known to the defendants and each of them; that because of such carelessness and negligence, water was permitted

to escape and run onto and into the premises occupied by the said plaintiff's assured. . . ."

To this complaint the defendants filed a demurrer alleging insufficient facts to constitute a cause of action. In the memoranda accompanying the demurrer the defendants assert that the complaint fails to state a cause of action for the reason that the lease which is made a part of the plaintiff's complaint contains a clause which specifically exempts the defendants from liability to the lessee, plaintiff's insured, and that the plaintiff's right and title to the claim asserted in the complaint is derived from said lessee and because of the fact that said lessee cannot recover, the plaintiff has no greater right than its insured. The clause referred to, and which is a part of the lease, reads as follows:

"The Lessors shall not be liable, for any damage or injury either to person or property, sustained by the Lessee or other persons, due to the building or any part thereof, or any appurtenances thereof, becoming out of repair, or for any injury or damage occasioned by or from elevators, electricity, hot or cold water, steam or compressed air, or the appliances for the conveyance of either or any of said substances or elements, or by or from plumbing or pipes, or from sewage or sewer gas, or from the bursting, leaking, running or failure to run, overflow or stoppage of any pipes of any kind, or of either connections or attachments, or by or from any tank, wash stand, sink, water closet, or waste pipe or sewers, in, over, upon or about either the said leased building or the premises on which it is located, or for any injury or damage occasioned by or from water, snow or ice being upon or coming through the roof of said building, or through any opening therein, nor for any injury or damage arising from or occasioned by the acts of any other tenant or of other persons therein, or of owners or occupants of adjacent property."

The court sustained this demurrer and the plaintiff refused to plead further. Judgment was rendered in favor of the defendants and against the plaintiff and an appeal taken to this court.

It is appellant's contention that the clause referred to in the lease, and heretofore set forth, is null and void for each of two reasons, to wit: (a) That its presence in the lease, in view of a very substantial amount of rent called for by the lease, to wit: $650 per month, renders the lease an unconscionable contract; and (b) Said clause should be held null and void as against the public policy of this state.

Examining appellant's first contention, we call attention to the definition of an unconscionable contract, as approved by this court in the case of *Stiefler* v. *McCullough* (1933), 97 Ind. App. 123 at p. 130, 174 N. E. 823, as follows:

"An unconscionable contract has been defined to be such as no sensible man not under delusion, duress or in distress would make and such as no honest and fair man would accept. There exists here 'an inequality so strong, gross and manifest, that it is impossible to state it to a man of common sense without producing an exclamation at the inequality of it.' Elliott on Contracts, Vol. 1, § 159. 'Where the inadequacy of the price is so great that the mind revolts at it the court will lay hold on the slightest circumstances of oppression or *advantage* to rescind the contract.' Elliott, *supra*.

"It is not the policy of the law to restrict business dealings or to relieve a party from his own mistakes of judgment but where one party has taken advantage of another's necessities and distress to obtain an unfair advantage over him, and the latter, owing to his condition, has encumbered himself with a heavy liability or an onerous obligation for the sake of a small or inadequate present gain there will be relief granted. *McCormick* v. *Malin* (1841), 5 Blackford 509."

We do not say that there may not be facts and circumstances which could be averred, but not now before us, upon which the court would be warranted in ■ holding that a similar provision contained in a lease would be null and void as unconscionable. We do hold that the allegations contained in appellant's complaint are insufficient to warrant us in holding the provisions in the lease under consideration null and void as constituting an unconscionable contract within the definition heretofore quoted.

To sustain its second contention to the effect that ·the clause in the lease purporting to exempt the appellees from liability is null and void as against public policy, appellant cites and relies upon a long line of New York decisions, among which are: *Drescher Rothberg Co.* v. *Landeker* (1913), 140 N. Y. S. 1025, 1026; *Kessler* v. *The Ansonia* (1930), 253 N. Y. 453, 171 N. E. 704; and *Kirshenbaum* v. *General Outdoor Advertising Co.* (1932), 258 N. Y. 489, 180 N. E. 245.

The validity or invalidity of the clause in the lease under consideration must be determined under the law as it has been declared by the Supreme and ■ Appellate Courts of Indiana in the absence of an applicable statute or constitutional provision.

In the case of *Hodnick* v. *Fidelity Trust Co.* (1933), 96 Ind. App. 342, at p. 349, 183 N. E. 488, this ■ court defines public policy in the following language:

"Public policy is a term that is not always easy to define. It may vary as the habits, opinions and wants of a people may vary, and what may be the public policy of one state or country, may not be so in another. The principle of public policy seems to have been earliest applied to agreements to promote litigation, or marriage, or in an endeavor to elude the binding effect of wagers at common law. ·The field of application has been an ever increasing

one. In the absence of a showing that any particular contract brought before the court is contrary to what the constitution, the legislature or the judiciary have declared to be the public policy, it is necessary in order to have the court hold it void on the ground of public policy, to show clearly that such contract has a tendency to injure the public, or is against the public good or is inconsistent with sound policy and good morals as to the consideration or as to the thing to be done or not to be done. Whether or not a contract is against public policy is a question of law for the court to determine from all of the circumstances in a particular case. The courts will keep in mind the principle that it is to the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract and that their agreements are not to be held void as against public policy, unless they are clearly contrary to what the constitution, the legislature, or the judiciary have declared to be the public policy or unless they clearly tend to the injury of the public in some way."

We know of no provision in the State Constitution or statutes, and have been unable to find any Indiana decision which declares that a clause in a contract, or a lease, between landlord and tenant, similar to the one under consideration, is null and void as against the public policy of this state. On the contrary, the uniform trend of the decisions in Indiana clearly upholds the right of freedom of contract, guaranteed by both the Federal and State Constitutions. The leading Indiana authority in support of this proposition is found in the case of *Niederhaus* v. *Jackson, Receiver* (1923), 79 Ind. App. 551, 137 N. E. 623, wherein the facts were as follows: One Jackson was receiver of the Chicago and Eastern Illinois Railroad Company. The railroad company had leased a portion of its right-of-way to one Niederhaus as a site for the location of an unloading platform to serve a grain elevator and busi-

ness operated by said Niederhaus. The lease contained a clause which read as follows: "In consideration of the privilege hereby given the Lessee to occupy and use a portion of the ground of the Railroad Company, as above described, and the benefits and privileges to be derived therefrom, and of the rental as above named, the Lessee hereby releases the Lessors, their successors, and assigns, from all liability . . . either in law or equity, for or on account of any cause of action that might arise by reason of any damage by fire to the Lessee caused by the operation of the railroad of the Lessors on, near or by the premises aforesaid, whether said damages occur on the premises hereby leased or on premises adjacent thereto." Some of the buildings belonging to Niederhaus were destroyed by fire, alleged to have been caused by the operation of the railroads. Niederhaus sued to recover damages and the defense interposed was that, under the provisions of the lease above quoted, the Lessor (railroad company) was exempt from liability. In discussing the validity of this lease, this court, at page 556 of 79 Ind. App. says:

"As it cannot be compelled to lease any part of its real estate to a private individual, and as it cannot be compelled to permit private persons to erect and maintain buildings thereon, it acts in its private capacity and not as a common carrier when it voluntarily enters into a contract leasing its real estate to a private individual, and in so doing it may impose any conditions that it desires, and that the lessee is willing to accept, as a consideration for the voluntary leasing of its premises. In the instant case the money consideration for the lease was inconsiderable. The principal consideration expressed therein was the stipulation for exempting appellee from liability for damages occasioned by fire, and in this stipulation the public had no interest; that such a provision in a lease between a railroad company and another is a valid provision has been many times decided. . . . The lease is

valid in its provisions for release of damages to property both on the company's lands and on the lands adjacent thereto. . . .

"We reach the conclusion that the provision releasing appellee from liability for damages from fire in the contract leasing a portion of appellee's right-of-way to appellant is not void as against public policy, and that it does not contravene the above statutes making railroad companies liable for damages resulting from fire. Having so concluded we hold that the demurrer to the second paragraph of answer was properly overruled."

In addition to the above we call attention to the well-settled rule in Indiana that a tenant cannot recover for personal injuries or damage to property caused by the defective condition of the leased premises unless the landlord agrees to repair and is negligent in so doing. *Guenther* v. *Jackson* (1922), 79 Ind. App. 127, 137 N. E. 582; *Guenther* v. *Jackson* (1920), 73 Ind. App. 162, 126 N. E. 873; *Roehrs* v. *Timmons* (1902), 28 Ind. App. 578, 63 N. E. 481.

Finally, we call attention to the following statement by the Court of Appeals of New York in the case of *Kirshenbaum* v. *General Outdoor Advertising Co., Inc.,* (1932), 258 N. Y. 489, 180 N. E. 245:

"Stipulations between a landlord and tenant, determining which shall bear a loss arising from non-repair or mis-repair of the tenement, and which shall be immune, are not matters of public concern. Moreover, the two stand upon equal terms; neither the one nor the other is under any form of compulsion to make the stipulations; either may equally well accept or refuse entry into the relationship of landlord and tenant. We think it clear that public policy does not condemn the immunity clause voluntarily agreed upon by these parties."

Therefore, it is our opinion that under the Indiana authorities the clause in the lease under consideration

is not void as against public policy and that the facts stated in appellant's complaint are insufficient to constitute a cause of action and the demurrer thereto was properly sustained.

Judgment affirmed.

NOTE.—Reported in 58 N. E. (2d) 947.