**JENNINGS REALTY CORPORATION,**
**Appellant (Plaintiff Below),**

v.

**FIRST NATIONAL BANK OF NORTH VERNON and United States of America, Appellees (Defendants Below).**

**No. 4–1184A315.**

Court of Appeals of Indiana,
Fourth District.

Nov. 21, 1985.
Rehearing Denied Jan. 14, 1986.

John A. Stroh, Sharpnack, Bigley, David & Rumple, Columbus, for appellant.

John Daniel Tinder, U.S. Atty., Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, for appellee United States of America.

Thomas J. Lantz and David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, for appellee First National Bank of North Vernon.

CONOVER, Judge.

Jennings Realty Corporation (Jennings) appeals the trial court's judgment declaring a second mortgage placed on its real estate by its lessees, Jack and Barbara Connaughton (Connaughtons), as mortgagors, in favor of Defendants-Appellees First National Bank of North Vernon (First National), as mortgagee, and United States of America-Small Business Administration (S.B.A.), as assignee, valid.

We reverse and remand.

ISSUES

Because we reverse, we address only the following issue:

Whether the trial court erred in holding valid a second mortgage between the Connaughtons, lessees and mortgagors of real estate, and First National, in light of the lease between the owner and the lessees-mortgagors.

FACTS

The Connaughtons leased 5.59 acres of real estate from Jennings in Jennings County for use as an automobile dealership. The lease was for a twenty year term, and provided the Connaughtons were to erect their own building on the real estate. It further provided the real property could be mortgaged to finance the construction and operation of improvements on the leased premises. The lease was properly recorded in its entirety. The Connaughtons obtained construction and permanent financing secured by an interim then a permanent mortgage. The loan proceeds were used to build a showroom, body shop, parking lot, and for other incidental improvements associated with the automobile dealership. Jennings had full knowledge of and gave consent to both the interim and permanent mortgages, but did not sign either.

Later, the Connaughtons obtained a Small Business Administration-guaranteed $350,000 loan from First National. This loan was secured by Connaughtons's second mortgage on the real estate. Jennings neither knew of nor signed the second mortgage. The proceeds from this loan were used to pay off the floor plan debts to General Motors, other business debts, and to acquire the assets of another automobile dealership. Neither First National nor the S.B.A. actually knew the Connaughtons were merely leasees. A bank officer assumed Jennings knew a second mortgage had been placed on the real estate because two of Jennings's officers brought a non-disturbance agreement to him. This testimony, however, was denied by one of the Jennings personnel named by the bank officer as a purveyor of the non-disturbance agreement.

The Connaughtons filed for bankruptcy in 1982. The S.B.A. then learned the Connaughtons did not own the property.

Jennings filed this declaratory judgment action seeking a declaration the second mortgage was invalid. Other facts necessary to the decision appear below.

DISCUSSION AND DECISION

Jennings is appealing a negative judgment. In such case we neither weigh the

evidence nor judge credibility. We may reverse only if the uncontradicted evidence supports no reasonable inference in favor of the decision or our review of the record leaves us with a definite and firm conviction a mistake has been made. *Clark v. Griffin* (1985), Ind.App., 481 N.E.2d 170, 172; *Burnett v. Heckelman* (1983), Ind. App., 456 N.E.2d 1094, 1097.

Jennings contends the trial court erred in holding the second mortgage valid. Jennings claims its real estate could only be used as security for a mortgage if the stated provisions of the lease were met.[1] Thus, he opines, the Connaughtons violated these provisions by obtaining the second mortgage (a) to pay operating expenses and (b) by not revealing they held only a leasehold interest in the security. Also, Jennings claims the bank was negligent for failing to investigate the Connaughtons's security interest before accepting the second mortgage. We agree.

### (a) *Notice Provisions*

■ Both parties agree the lease between Jennings and the Connaughtons was properly recorded. IND. CODE 32-1-2-16 requires recording of every conveyance or mortgage of lands or of any interest therein, and every lease with more than a 3 year term.[2] The purpose of the statute is to give constructive notice to all persons of the interest claimed in the property by reason of such conveyance, mortgage or lease. *McCoy v. Richards*, 581 F.Supp. 143, 148 (S.D.IN.1983). We recognize two kinds of notice, constructive and actual. In *Weinke*

*v. Lynch* (1980), Ind.App., 407 N.E.2d 280, Judge Shields stated

> Constructive notice is a legal inference from established facts. Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence, " 'and charge a subsequent grantee with notice of all that is shown by the record.' " (Citation omitted.) *Willard v. Bringolf,* (1936) 103 Ind.App. 16, 29, 5 N.E.2d 315, 321. Notice is actual when it has been directly and personally given to the person to be notified. Actual notice is generally extended to embrace " 'all degrees and grades of evidence from the most directive and positive proof to the slightest circumstances from which a court or jury would be justified in inferring notice.' " (Citation omitted.) *Willard, supra,* 103 Ind.App. at 29, 5 N.E.2d at 321. ... One who fails to search the records acts at his own peril, jeopardizing his interest against prior interest holders of record, ...

*Weinke,* 407 N.E.2d at 286.

The undisputed evidence shows the Connaughtons had actual notice of the lease provisions. (R. 151, Dep. 39–40). Specifically, they knew the land could be used as security only when the loan proceeds secured by a mortgage on the real estate were used for "construction and operation of improvements on the leased premises...." There is no provision authorizing any such loan proceeds could be used to

---

**1.** Sections 9 and 10 of the lease provide in pertinent part:

> 9. It is understood that Lessee shall, at its expense, obtain a loan or loans necessary for the purpose of providing both interim and permanent financing of the construction and operation of improvements on the lease premises and that such loan or loans may be secured by a mortgage or mortgages of the leased premises and the improvements, an assignment or pledge by Lessee of this lease and a security interest in materials, fixtures and equipment owned by Lessee and located or to be located on the leased premises.
>
> 10. Lessor shall within ten (10) days after written request from Lessee, execute all mortgages and other loan instruments and any modification or amendment to this lease

which may be required by lenders in connection with the interim or permanent financing of the improvements on the leased premises.

**2.** I.C. 32–1–2–16 states:

> Every conveyance or mortgage of lands or of any interest therein, and every lease for more than three (3) years shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance, mortgage or lease shall take priority according to the time of the filing thereof, and such conveyance, mortgage or lease shall be fraudulent and void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable consideration, having his deed, mortgage or lease first recorded.

pay business debts or to acquire the assets of another automobile dealership. Because Jennings neither knew of nor agreed to a mortgage of its real estate for such purposes, such mortgage was executed by the Connaughtons in clear violation of paragraphs 9 and 10 of the lease agreement.

■ First National had constructive notice of the Connaughtons/Jennings lease. It had been properly recorded, and thus constituted constructive notice to First National. A diligent investigation by the bank would have revealed the leasehold interest the Connaughtons actually had in the property later secured by the second mortgage.

### (b) *Contract Interpretation*

■ When construing the agreement between the parties, we must leave to individual parties the right to make the terms of their agreement as they deem fit and proper so long as those terms are lawful. *Brademas v. Real Estate Development Co.* (1977), 175 Ind.App. 239, 370 N.E.2d 997, 1000. The parties to a contract have the right to define their mutual rights and obligations. *Southern School Bldgs., Inc. v. Loew Elec., Inc.* (1980), Ind.App., 407 N.E.2d 240, 244. It is not within our province to make a new contract for the parties or to ignore or eliminate any provisions in the instrument. *First Federal Savings and Loan Association v. Stone* (1984), Ind. App., 467 N.E.2d 1226, 1234.

■ Upon examination of the lease, we give the words their ordinary and common meaning unless the intended meaning is clear from the contract's subject matter. *Ogilvie v. Steele* (1983), Ind.App., 452 N.E.2d 167, 170. While parol evidence then, is admissible to explain the facts and circumstances surrounding an ambiguous agreement, such evidence must not be used to vary or contradict the written contract's unambiguous provisions. *Merchants National Bank v. H.L.C. Enterprises* (1982), Ind.App., 441 N.E.2d 509, 513.

The parol evidence in this case revealed two prior mortgages between the Con-

naughtons and Home Federal Savings and Loan (Home Federal) in which they used Jennings's land as security. The proceeds of these loans were used for improvements on the leased premises. Jennings did not sign either mortgage but had full knowledge and gave consent to both. The appellees contend the lease required Jennings's signature only when the Connaughtons requested it. We find this argument logically inconsistent with the understanding of · the parties. The written covenant between the Connaughtons and Jennings states at paragraph 15:

> No waiver of any covenant or condition or of the breach of any covenant or condition of this lease shall be taken to constitute a waiver of any subsequent breach of covenant or condition nor to justify or authorize the non-observance on any· other occasion of the same or of any other covenant or condition herein . . .

When interpreting the lease agreement, we are bound to give effect to its plain meaning. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 846. The terms in paragraph 15 indicate the earlier transaction between the Connaughtons, Home Federal and Jennings did not constitute a ratification of the second mortgage agreement with First National and the S.B.A. We find the second mortgage did not meet the lease requirements Jennings and the Connaughtons had agreed upon. To hold otherwise would change the terms of the contract.

■ The Connaughtons' non-ownership of the land in question is the ultimate factor in our determination. Generally, one who has no ownership interest in property has no right to mortgage it without the owner's consent. This view is in accord with our holding in *Aircraft Acceptance Corp. v. Jolly* (1967), 141 Ind.App. 515, 230 N.E.2d 446, 450, where we stated a third person cannot transfer title to property without the knowledge and consent of the owner.

By statute, the Connaughtons would need Jennings's written permission before

he used the land as security. I.C. 32–1–10–1 states in pertinent part:

No person or persons shall be authorized to sell, release, or convey real estate or any interest therein, as attorney-in-fact of another, nor to make any deed, mortgage, or other paper entitled to record as such attorney-in-fact, or to transfer, assign, release, or satisfy in whole or in part any mortgage, lease, mechanic's lien, or any other instrument which is of record in the recorder's office, involving the signing of the name or names of the person, persons, or corporation executing the same, or to whom the same is executed, without being authorized so to do by an instrument in writing duly signed and acknowledged, by the person, persons, or corporation granting such authority, particularly setting forth and specifying the power or authority given, granted, and conferred to be known as a power of attorney, which shall be duly recorded in the office of the recorder of the county or counties where such business is to be transacted.

We find the Connaughtons failed to comply with I.C. 32–1–10–1. Thus, they lacked authority to validly execute the second mortgage on the Jennings real estate loans they used to pay business debts and purchase the other auto agency. Accordingly, we are left with a definite and firm conviction a mistake was made in holding the Connaughtons-First National mortgage valid. It was, in fact, invalid.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER, J., concurs.

ROBERTSON, J. (sitting by designation), concurs.